IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OYO HOTELS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-3433-N |
| | § | |
| OM CHAMUNDA, LLC, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Order addresses Defendant Om Chamunda, LLC's ("Om Chamunda") Rule 12(b)(2) motion to dismiss[1] for lack of personal jurisdiction [6]. Because the Court determines that Om Chamunda's business arrangement with OYO Hotels created sufficient minimum contacts with Texas to support the exercise of personal jurisdiction over the Defendant, the Court denies the motion.

## I. THE ORIGINS OF THE DISPUTE

This case arises from a soured business relationship between a hotel brand and the owner-operator of one of the brand's properties. Plaintiff OYO Hotels, Inc. ("OYO") operates properties under its brand name throughout the world. Decl. of Sonal Sinha ¶ 1 [16-1]. Om Chamunda operates a hotel in Alabama. Pl.'s Orig. Compl. ("Complaint") 2 [1]. In late 2019 OYO and Om Chamunda agreed that Om Chamunda would convert its

---

[1] Om Chamunda also moved for dismissal or transfer based on an arbitration clause included in the contract. The parties, however, have agreed to waive the arbitration clause if the Court concludes that it has jurisdiction over Om Chamunda.

property to an OYO-branded hotel.  *Id.* at 2.  Om Chamunda agreed to renovate its property in line with standards supplied by OYO.  *Id.* at 2–3.  For its part, OYO agreed to fund this work.  *Id.* at 2.  OYO would market the property, manage the hotel's online presence, and exercise unilateral authority over all relevant pricing terms including room rates and deposits.  Decl. of Vishal Singh ¶¶ 7–11 [16-1].  All digital bookings would pass either through OYO's own platform or come through third-party websites with which OYO maintained relationships.  Complaint 3.  The teams responsible for maintaining OYO's proprietary pricing software and managing the Om Chamunda property's online presence operated out of the Dallas headquarters.  Decl. of Vishal Singh ¶ 12.  Om Chamunda retained the obligation to conduct physical on-site operations and maintain a full inventory of available rooms to which OYO could direct bookings.  Complaint 2–3.  The parties agreed that Om Chamunda would book all walk-in business through OYO's revenue management system.  *Id.* at 3.

The parties soon came into conflict.  Firs OYO alleges that, despite an extension of time, Om Chamunda failed to complete the agreed-upon renovations.  *Id.* at 5.  Then, the COVID-19 public health crisis emerged, profoundly affecting the hospitality industry.  OYO alleges that, in the early days of the pandemic, Om Chamunda committed additional acts in breach of the agreement, including demanding OYO remove the hotel from its platform, refusing to accept any guests other than walk-in customers, and charging a per-room deposit that OYO had not approved.  *Id.*

In October 2020, attorneys representing Om Chamunda sent OYO a demand letter threatening to sue OYO for, among other things, violating Texas and federal law franchise

ORDER – PAGE 2

laws. *Id.* at 6.  In November 2020, OYO commenced this action seeking both a declaratory judgment as to the state and federal claims threatened by Om Chamunda and damages for breach of contract. *Id.* at 7–9.  Om Chamunda has moved to dismiss the action for want of personal jurisdiction.

## II. THE PERSONAL JURISDICTION STANDARD

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).  The Texas long-arm statute confers jurisdiction to the limits of the Constitution.  *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984).  "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. – Tyler 2001, no pet.).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's — and thus a federal court's — jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977).  Specifically, due process requires that two elements be satisfied.  First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court

in the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).  Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'"  *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).  The minimum contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign."  *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard.  *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (citations omitted).  A court may assert general jurisdiction over a foreign corporation "to hear any and all claims against" it only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive "as to render [it] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *accord Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  Under either a general or specific jurisdiction analysis, however, "[t]he constitutional touchstone remains whether

the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Plaintiff, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (collecting cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d at 219–20 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson*, 755 F.2d at 1165). "But even if the court receives discovery materials, unless there is a full and fair

ORDER – PAGE 5

hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### III. THE COURT HAS PERSONAL JURISDICTION OVER OM CHAMUNDA

The Court starts by noting that OYO does not contest the issue of general jurisdiction. Pl.'s Resp. 13 [16]. Whether exercising personal jurisdiction over Om Chamunda comports with due process turns, therefore, on whether specific jurisdiction exists. The Fifth Circuit has articulated a three-step test for conducting the specific jurisdiction analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether its purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The parties have largely focused their attention on advocating for or refuting the applicability of the personal jurisdiction standard set forth in *Burger King v. Rudzewicz*, 471 U.S. 462 (1984). The Court agrees that *Burger King* and cases in this Circuit applying it offer the surest guidance to determine whether specific jurisdiction lies in this case. Courts applying the *Burger King* framework have identified "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" as the relevant factors in this inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting

*Burger King*, 471 U.S. at 479).   Analysis of these factors in this case supports the conclusion that the Court may properly exercise personal jurisdiction over Om Chamunda.

### A.  Om Chamunda Has Established Minimum Contacts with Texas

*1.  Negotiations and Contemplated Consequences.* — The arrangement between the parties anticipated wide-ranging and continuous future consequences within Texas. OYO's primary obligations—marketing the property, directing bookings to it, and managing the entire revenue stream—relied on the efforts of OYO teams based out of its Dallas headquarters.  While regional OYO personnel served as a first point of contact and would conduct property audits, the parties anticipated that regional OYO field employees would escalate serious issues to headquarters-based staff for resolution.  Decl. of Sonal Sinha ¶ 7.  Thus, fulfilling its obligations to Om Chamunda would require OYO to undertake extensive and continuous activities in Texas.

An interdependent commercial relationship that creates an expectation of extensive out-of-state activities can give rise to contacts sufficient to permit a court in one party's home state to exercise personal jurisdiction over a foreign counterparty.  As the Supreme Court noted in *Burger King*, a defendant who has eschewed "the option of operating an independent local enterprise" by agreeing to cede significant control to an out-of-state corporation has established contacts with that corporation's home state that "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'"  *Burger King*, 471 U.S. at 479–80 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Engaging in this type of highly structured relationship, the Court noted, creates "continuing and wide-reaching contacts" with the forum state.  *Id.* at 480.

ORDER – PAGE 7

The relationship between OYO and Om Chamunda bears striking resemblance to that between Burger King and Rudzewicz and has resulted in numerous contacts between Om Chamunda and Texas. Just as Rudzewicz consented to Burger King's regulation of its menu and quality control, layout of its physical space, and key components of the restaurant's operation, *see Burger King*, 471 U.S. at 465 n.4 (listing aspects of franchise operation subject to control by Burger King's corporate headquarters), Om Chamunda agreed to OYO's unilateral control over all relevant pricing terms, the hotel's online presence and marketing, all digital booking activity, and management of all revenue generated by the property. By voluntarily accepting these terms, Om Chamunda acquiesced in the "long-term and exacting regulation of [its] business" out of OYO's Dallas headquarters which would inherently involve "continuing and wide-reaching contacts" over the entire duration of the relationship. *Id.* at 480.

Om Chamunda contends that the post-*Burger King* Fifth Circuit case *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985), compels a different outcome in this case, but that case is distinguishable. *Spademan* involved a one-off transaction by which an out-of-state manufacturer acquired the intellectual property rights to produce the invention of a Texas-based creator. *Id.* at 1187–89. The arrangement between OYO and Om Chamunda — far from a one-off, arms-length transaction of the type involved in *Spademan* — necessarily involved a long-term and interdependent business relationship between Om Chamunda in Alabama and OYO in Texas capable of giving rise to substantial contacts between Om Chamunda and this state.

ORDER – PAGE 8

***2. The Express Terms of the Contract.*** — The second factor also supports a finding that jurisdiction lies over Om Chamunda.  Like the arrangement involved in *Burger King*, the agreement between OYO and Om Chamunda contemplates a long-term relationship—in this case the initial term ran for seven years and provided for automatic one-year extensions unless one of the parties provided notice of intent to terminate.  Hence, the parties started their contract under the belief that the relationship would continue for nearly a decade and perhaps much longer.  Combined with the depth of control envisioned by the arrangement, the long-term nature of the tie-up reinforces the depth of the contacts created between Om Chamunda and Texas.

Additionally, the choice-of-law provision in the contract specifies that Texas law governs the agreement, further supporting the conclusion that the Court may exercise jurisdiction over Om Chamunda.  While the Supreme Court has cautioned that jurisdictional analysis should not begin and end with a contractual choice-of-law clause, a Court may properly consider it in conjunction with other contacts.  *Burger King*, 471 U.S. at 482.  And this contract clearly emphasized that OYO maintains its corporate headquarters in Dallas.  Pl.'s Ex. to Orig. Compl. 2 [1-2]; *see also* Decl. of Sonal Sinha ¶ 6.  The choice of Texas law, when viewed in light of the long-term "interdependent relationship" contemplated between OYO and Om Chamunda, reinforces the connection between Om Chamunda and Texas.  *Id.* at 482.

***3. Actual Course of Dealing.*** **—** The third and final factor again favors OYO. Though the alliance lasted less than a year before relations soured, OYO's uncontradicted affidavits suggest that it provided the agreed-upon booking and pricing services to Om Chamunda during the period before the contract was terminated.  OYO, on the other hand, alleges that Om Chamunda engaged in activities that suppressed the property's revenue in breach of the contract.  Given that (i) OYO oversaw the revenue management function out of its Dallas headquarters and (ii) Om Chamunda owed a duty to book all revenue associated with its property through this system, a breach involving revenue suppression would have foreseeably caused injury to OYO in Texas.

### B. The Defendant's Contacts with Texas Relate to the Causes of Action

The second step in the specific jurisdiction analysis favors OYO because Om Chamunda's contacts relate directly to the causes of action.  OYO seeks a declaratory judgment that its business practices do not violate Texas or federal law.  OYO further alleges that Om Chamunda has breached the parties' contract.  Om Chamunda's contacts with Texas arise directly from the long-term, highly structured business arrangement between itself and OYO.  Both of OYO's causes of action seek to test the validity and construction of this agreement. Because the causes of action in this case relates directly to the contractual relationship from which Om Chamunda's contacts with Texas arose, the second stage of the Fifth Circuit's three-step analysis is also satisfied. The burden now shifts to the defendant to demonstrate why exercising jurisdiction would constitute fundamental unfairness.

ORDER – PAGE 10

### C. *Om Chamunda Has Not Demonstrated that Litigating in Texas Would be Unfair*

Om Chamunda has failed to demonstrate that exercising jurisdiction over it would amount to unconstitutional unfairness.  In assessing whether exercising jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 320, the Court seeks to balance: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 544 (5th Cir. 2014) (citing *Burger King*, 471 U.S. at 476–77).

Balancing these factors supports exercising jurisdiction over the Defendant. Considering the burden on the defendant, Om Chamunda makes no allegation from which the Court can conclude that litigation in Texas poses an inconvenience over and above that applicable to any out-of-state defendant.  The State of Texas, on the other hand, has a clear interest in the litigation.  Om Chamunda has called into question the lawfulness of OYO's entire business model under Texas law, and OYO seeks to test the validity of this claim. As such, at least with respect to this issue, Texas courts have a stronger interest in this case than the courts of any other jurisdiction.

## CONCLUSION

Based on the foregoing, the Court determines that exercise of personal jurisdiction over Om Chamunda will not offend its due process rights.  Accordingly, the Court denies Om Chamunda's motion to dismiss in its entirety.


Signed September 9, 2021.


David C. Godbey
United States District Judge